# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 27, 1899.

ALBERT H. HOCK ET AL.

VS.

THE MAYOR AND CITY COUNCIL OF BALTIMORE CITY ET. AL.

*Steiner & Putzel* for plaintiffs.

*John E. Semmes, Leon E. Greenbaum* and *John Phelps* for defendants.

STOCKBRIDGE AND DENNIS, JJ.—

The bill of complaint in this case attacks the validity of an ordinance of the Mayor and City Council of Baltimore, being Ordinance No. 26, approved June 15th, 1898. and commonly known as the "Dog Ordinance." And Section 23 of the ordinance is particularly attacked upon grounds which go to the validity of that section only, and not of the whole ordinance, this being the section under which the seizure and destruction of unlicensed dogs is authorized to be entrusted to the Society for the Prevention of Cruelty to Animals or such other corporation or individual or individuals as the Mayor may deem best.

The case was presented to the Court under the provisions of Section 183 of Article 16 of the Code for answer as to certain questions of law, which were originally formulated as follows:

"1st. Was the ordinance approved June 15th, 1898, validly passed, in that was it necessary to be submitted to the Board of Estimates and the Board of Public Improvements under the new charter of Baltimore City?

"2nd. Was the contract of the 29th day of June, 1898, between the Mayor and City Council and the Society for the prevention of Cruelty to Animals valid in that was it necessary to let the same to the lowest bidder under the new charter?"

And at the original argument of the case a third question was raised and argued by counsel, which may be formulated thus:

Is the ordinance in question constitutional, in that it imposes a special tax upon certain property instead of taxing it as other property is taxed?

It is sufficient answer to this last proposition to say that a similar ordinance to the one now in question has been held constituational upon like objection raised to it, in the case of Hagerstown vs. Witmer, 86 Md., 293, in which case the Court of Appeals says: "It is true that dogs are now generally recognized as property, but they are of a qualified kind of property, and such as is peculiarly the subject of police regulations. They have never ranked with such domestic animals as horses, cattle and sheep, in which the owner has an unqualified and complete property." Since, then, dogs are peculiarly the subject of police regulations, and as a license provision is one of the most familiar methods for the enforcement of such regulation, a requirement of license such as is contained in the present ordinance cannot be regarded as rendering it unconstitutional because impinging upon the tax limitations.

This determination of the character of the power exercised by the municipal corporation in providing for the licensing of dogs and the destruction of unlicensed animals running at large affords the answer to the first of the questions presented in the agreement of counsel, for, while the enforcement of a police regulation may incidentally result in a public improvement, yet it is not such a public improvement as to come within the class of those works which in legal construction are embraced under that term, and consequently it is not such a measure as under the provision of Section 85 of the New Charter of Baltimore City is required to be submitted to the Board of Estimates and Board of Public Improvements.

The second question relates to the provisions of Sections 14 and 15 of the New Charter, which requires that in contracting for any public work or the purchase of any supplies or materials involving an expenditure of $500 or more for the city or by any of the city's departments, sub-departments or municipal officers not embraced in the departments, the same shall, after advertisement as provided in the Act, be awarded to the lowest responsible bidder. The wording of this section is much broader than that usually found in municipal charters, but broad as these terms are, they are not sufficiently broad to embrace matters of employment in the performance of one of the essential functions of government, such as the police power, a power which inheres in the sovereignty of the State and which, while it may be delegated to municipal corporations for its exercise within the corporate limits, as is done in the present charter, yet neither in the hands of the State nor in the hands of a municipal body politic can be limited and controlled by such provisions as are embraced in Sections 14 and 15 of the New Charter, and therefore the answer to the second question embodied in the submission must be that it was not necessary that the contract of the 29th of June, 1898, between the Mayor and City Council and the Society for the Prevention of Cruelty to Animals should, after advertisement, have been let to the lowest responsible bidder.

Certain additional considerations in connection with Section 23 of the ordinance were called to the attention of counsel by the Court after the original argument, and upon these briefs have been submitted. They are: 1st. Whether or not the different portions of the section were inconsistent one with the other, thereby rendering it void? 2nd. Was or not the section rendered void and inoperative by reason of the provision therein contained authorizing the Mayor to contract for a period beyond the life of the City Council enacting the ordinance? And, 3rd, was or not the effect of the section to delegate to a private corporation the exercise of that which was a police power, and therefore rendering it void and inoperative?

It will be observed that the early portion of the section authorizes and empowers the Mayor to contract on behalf of the city for the seizure and destruction of unlicensed animals, and closes with a proviso that any excess of money paid to contractors, after paying the expenses incurred by such contractors, should revert to the City Treasury. The use of the words "contract" and "contractor" in the section are somewhat unfortunate in that when the entire section is taken together the usual significance of these words cannot here be implied to them; furthermore, there is no mention or specification contained anywhere in the section of a contract price; that is, of a consideration for the undertaking as the same is commonly understood and to be found in the ordinary contract. The proviso limits, not in definite terms of dollars and cents, but to actual expenses incurred, the amount to be ultimately retained by the society, and therefore supplies that which is lacking in the earlier part of the section and becomes supplementary to, rather than in conflict with it.

The authority given by section 23 to the Mayor to arrange for the destruction of unlicensed animals by so-called contract stipulates that the employment shall not be for a longer period than three years, no minimum however being stated, and is therefore sufficient warrant for the Mayor, should he see fit to exercise it, to enter into an agreement for the term of three years, while the life of a City Council can not in any event exceed a period of two years, and therefore it has been strenuously ar-

gued that power is given to the Mayor to place a limitation upon the action of the Legislative branch of the government in excess of any constitutional authority. Instances are so frequent in which similar power is given in cases which have no relation to the police power that the citation of them is unnecessary, and such action has been uniformly upheld; they are to be found in many, if not all cases of the creation of public indebtedness, the erection of great public improvements and the like, but when dealing with subjects relating to the police power, to the public health or the public morals a different rule has obtained. Upon these subjects there is no longer any question that a legislative body has no power to authorize the making of any contract or engagement which shall in any manner limit or abridge the power of a subsequent legislative body to repeal, alter or amend the antecedent enactment.

1st Dillon on Munc. Corp., sec. 97, and cases there cited. And in a number of cases where such legislative action has been attempted the contracts or engagements entered into have been set aside. These, however, have been cases arising between the municipal bodies and the firm or corporation with which the contracts had been entered into, and from this it follows that where a legislative body authorizes the employment of a person, firm or corporation to perform a specified work in connection with the exercise of the police power of a municipal corporation, the person, firm, or private corporation accepting such employment, does so, subject to the inalienable right of appeal upon the part of the legislative branch of the municipal corporation, and, therefore, the fact that in the present case the section of the ordinance in question authorizes the employment for a particular purpose, for a term as long as three years, cannot of itself invalidate the section.

That a municipal body cannot delegate the exercise of a police power is well settled by a long line of decisions, and if it was clear that section 23, now under consideration, was in fact such a delegation of power, or an attempt so to do, there would not be the slightest hesitation in declaring it void. In the case relied on by the counsel for plaintiff, of Fox against the Mohawk and Hudson River Humane Society, 25 N. Y. Appeal Div. 26, the Legislature of New York attempted in a number of cities to turn over to private corporations the exercise of this very power of the seizure and destruction of dogs, but went beyond that point and invested these same private corporations located in the several cities with the power of issuing licenses for dogs or refusing to issue them.

No clearer case of an attempted delegation of police power could well be made out; here were private corporations located in various cities in the State receiving a grant from the Legislature of the State of the right to exercise certain of the functions of government in cities, which under their charters from the Legislature of the State, were vested with the exercise of the police powers, of which this was one, and the act was properly and promptly set aside, and might have been set aside on reasons far stronger than those assigned by the Court in that case. In the present ordinance however, the matter of the contract or employment does not divest the power of the municipal corporation, its exercise rests in the discretion of the Mayor, and by the terms of the contract is to be exercised under his supervision, and requires his approval; it is for the performance of a definite thing; it does not vest in the Society any discretion as to the manner in which its obligations shall be performed, and therefore the relation of the Society for the Prevention of Cruelty to Animals to the city under the section in question becomes one of agency, the responsibility of the city remains for the acts of the Society.

This can never be true where a power has been delegated. In the present ordinance the society is vested with no discretion to seize and destroy certain unlicensed dogs and let others go free; it is its plain duty to so seize and destroy all unlicensed dogs, and for its action or failure to act the society can not be made responsible; that responsibility must still remain where it was before the ordinance was adopted, namely, with the municipal corporation, and therefore however vicious and open to criticism the section may be upon other grounds, it cannot be successfully attacked as an attempted delegation of power.